UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKIE F. CORRARO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-0455-CVE-PJC |
| | ) |
| MOODY INTERNATIONAL | ) |
| a/k/a Intertek, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is Plaintiff's Amended Motion for Default Judgment and Brief in Support (Dkt. # 27). Plaintiff Vickie F. Corrara seeks default judgment against Moody International a/k/a Intertek in the amount of $366,714.29. She argues that she properly served defendant, through its wholly owned subsidiary Intertek Testing Services, N.A. (ITS), but defendant has not filed a responsive pleading or entered an appearance in this case.

**I.**

On July 21, 2011, plaintiff filed this case alleging that she was employed by Moody International and that she was subjected to sexual harassment during her employment. Dkt. # 2. She claims that she exhausted her administrative remedies and received a right to sue letter from the Equal Employment Opportunity Commission before filing her complaint. She seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), and she was represented by Jeff Nix when the case was filed. The Court Clerk issued a summons (Dkt. # 3), and the summons identifies the defendant as ITS. Plaintiff obtained new counsel, Terry A. Simonson, and Simonson filed an Affidavit of Proof of Service (Dkt. # 10). The affidavit states that Nix sent

a copy of the complaint and a summons to the registered agent of Moody International a/k/a Intertek, but Nix failed to file proof of service with the Court. Dkt. # 10, at 1. The affidavit identifies The Corporation Company as the registered agent for ITS, and it also states that a copy of the complaint and a summons were sent to Richard T. John, general counsel for ITS. Id. at 2. The service of process transmittal provided by CT Corporation states that a summons and copy of the complaint was served on ITS, and the discrepancy between the identity of the named defendant and ITS is noted. Id. at 3.

Defendant did not file a responsive pleading or enter an appearance, and plaintiff filed a motion for default judgment (Dkt. # 13). Plaintiff argued that she had properly served defendant through ITS, because Moody International had been acquired by "Intertek." Dkt. # 13, at 2-3, 13. The Court set plaintiff's motion for an evidentiary hearing to determine, inter alia, whether service on defendant was proper. At the hearing, the Court noted several potential problems with the case caption and service on defendant. The Court initially questioned whether plaintiff had named the right party as a defendant, because there are or were numerous companies operating under names similar to "Moody International" and "Intertek." Dkt. # 16, at 2. It was also unclear if Moody International was still an extant corporation, because Intertek had acquired Moody International and plaintiff had not produced evidence concerning Moody International's current corporate status. Id. at 3. The Court also noted that plaintiff served ITS, not Intertek or Moody International, and it was unclear if the proper defendant had been served. Id. at 3-4. The Court advised plaintiff to contact Intertek or review an SEC filing to determine if Moody International still existed following the acquisition by Intertek or to determine the identity of the company that succeeded Moody International. Id. at 5-7. At the request of plaintiff's counsel, the Court took the motion for default

judgment under advisement while plaintiff's counsel attempted to locate additional evidence to show that the defendant had been properly served. Id. at 9-13.

Plaintiff withdrew her motion for default judgment because she needed additional time to search for evidence establishing the corporate identity of her former employer. Dkt. # 19. Plaintiff subsequently submitted a status report stating that she intended to file an amended motion for default judgment, and the Court directed plaintiff to file her amended motion no later than May 15, 2012. Dkt. ## 21, 22. Plaintiff filed her amended motion for default judgment (Dkt. # 27) and provided additional information in support of her argument that she has properly served defendant. She argues that service on a wholly-owned subsidiary, ITS, constitutes valid service on Intertek, because ITS is the alter ego of Intertek and ITS should be treated as Intertek's involuntary agent for service within the state of Oklahoma. Dkt. # 27, at 25-30. She also argues that John holds various positions for the Intertek group of companies and service of process on John is valid service on Intertek. Id. at 23-24. Plaintiff requests damages in the amount of $366,714.29, plus prejudgment interest and attorney fees. Id. at 20.

## II.

Plaintiff argues that she has properly served defendant Moody International a/k/a Intertek through ITS, and the Court should enter default judgment against defendant. She separately argues that service on John also gave Intertek sufficient notice of her claims, and she has adequately served Intertek under Fed. R. Civ. P. 4(h) by giving notice to an officer of Intertek.

The Court initially notes that plaintiff's complaint and amended motion for default judgment do not clearly state the current corporate identity of plaintiff's former employer, and confusion as to the name of the proper defendant makes it difficult to determine if service was proper. The

complaint identifies the defendant as "Moody International a/k/a Intertek." On March 7, 2011, Intertek announced that it had entered an agreement to acquire Moody International from Investcorp, an alternative investment firm that owned Moody International. Dkt. # 27-4, at 3. The press release simply states that Intertek "acquired" Moody International but it does not provide any information as to whether Moody International would retain a separate corporate status after the transaction. According to Intertek's annual report, Intertek consists of Intertek Group PLC and 302 subsidiary companies. Dkt. # 27-4, at 2. Moody International is not specifically listed as a subsidiary. Using the information provided by plaintiff, the Court was able to determine that plaintiff's former employer was Moody International Limited, an entity organized under the laws of the United Kingdom. According to the official registry maintained by the United Kingdom, known as the Companies House, Moody International Limited is still a going concern and it actively maintains its corporate status. Thus, it appears that plaintiff attempted to name the proper defendant (Moody International) without using its full corporate name (Moody International Limited), but she has served a completely different entity that is an unrelated subsidiary of Intertek Group PLC.

Even if the Court were to assume that "Intertek" is a proper party, plaintiff must still show she has served Intertek in compliance with Fed. R. Civ. P. 4. Intertek Group PLC is incorporated under the laws of the United Kingdom and plaintiff has not attempted service abroad. The United States and the United Kingdom are signatories to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (Hague Convention), and the purpose of the Hague Convention is to "provide a simplified way to serve process abroad, to assure that defendants sued in foreign jurisdictions receive actual and timely notice of suit, and to facilitate proof of service abroad." Marschauser v. Travelers Indem. Co., 145 F.R.D. 605 (S.D. Fla. 1992).

In some circumstances, a plaintiff may serve a foreign corporation through a domestic subsidiary without reference to the Hague Convention if the internal laws of the forum state do not require service abroad. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694 (1988). However, in lieu of service abroad, the Due Process Clause of the Fourteenth Amendment requires service on a domestic agent that complies with the laws of the forum state. Id. at 707-08. If permitted by the laws of the forum state, valid service may be made on a foreign corporation by serving a domestic subsidiary. Quarles v. Fuqua Indus., Inc., 504 F.2d 1358 (10th Cir. 1974). This does not mean that the mere presence of a domestic subsidiary in the forum state permits a plaintiff to forego service on the foreign corporation, and such substituted service will not be permitted if the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent . . . ." Consolidated Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000).

Plaintiff argues that ITS should be treated as the alter ego of Intertek as a matter of Oklahoma law, and ITS may be considered the involuntary agent for service on Intertek. Dkt. # 27, at 25. Oklahoma follows the general rule that a corporation is a distinct legal entity and corporate status should not be disregarded unless "separate corporate existence is a scheme to perpetrate a fraud or one corporation is organized and controlled by the other corporation as a mere instrumentality or adjunct so that it is a dummy or sham corporation." Oklahoma Oncology & Hermatology P.C. v. US Oncology, Inc., 160 P.3d 936, 945 n.17 (Okla. 2007). The Oklahoma Supreme Court has identified nine factors to be considered when determining if a subsidiary should be treated as an agent or instrumentality of a parent company:

> (1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant and subservient corporations have

common directors and officers, (3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses or losses of the subservient corporation, (6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping the entities separate.

Gilbert v. Security Finance Corp. of Oklahoma, Inc., 152 P.3d 165, 175 (Okla. 2006).

The evidence produced by plaintiff shows that ITS has registered with the Oklahoma Secretary of State to conduct business within the state of Oklahoma and that its principal place of business is Cortland, New York. Dkt. # 27-2, at 2. CT Corporation sent a copy of plaintiff's complaint and a summons to John, ITS' general counsel, in Cortland. See Dkt. # 27-3, at, 5. Plaintiff has also produced evidence that John has had various job titles for Intertek Group PLC or its subsidiaries in the past, but the evidence concerning John's other positions predate the filing of plaintiff's claims. Id. at 7-14. Intertek Group PLC listed ITS as a wholly-owned subsidiary in its 2011 annual financial statement, and ITS is part of Intertek Group PLC's Commercial and Electric Division. Dkt. # 27-4, at 2. Moody International Limited was integrated into Intertek Group PLC's Industry and Assurance Division. Dkt. # 27-4, at 4. The day-to-day operations of Intertek Group PLC are handled by the Intertek Operations Committee, and Intertek Group PLC states that "one of our key values is to act as one united company . . . ." Dkt. # 27-5, at 3, 8.

The Court will consider the evidence submitted by plaintiff in light of the nine Gilbert factors but notes that this analysis is difficult due to the lack of evidence as to ITS' operations.[1] Plaintiff's

---

[1] The Court notes that plaintiff has not submitted evidence concerning the third, fourth, fifth, and sixth Gilbert factors, and these factors will not be considered.

evidence generally consists of financial statements and other corporate documents concerning the management of Intertek Group PLC, but there is very little information about ITS and its daily operations. Plaintiff has shown that ITS is a wholly-owned subsidiary of Intertek Group PLC, and the first <u>Gilbert</u> factor supports plaintiff's argument. See <u>Gilbert</u>, 152 P.3d at 175. Plaintiff points out that Gregg Tiemann was the president of ITS in 2009 and he currently serves as the president of Intertek Group PLC's Commercial and Electrical Division in Europe, North America, and South America, and she argues that the second <u>Gilbert</u> factor (common directors and officers) favors treating ITS and Intertek Group PLC as one entity for jurisdictional purposes. Dkt. # 27-2, at 2; Dkt. # 27-5, at 3.  This shows that ITS and Intertek Group PLC may have one common officer, but it does not show that ITS' board is comprised of directors of Intertek Group PLC or that the day-to-day operations of ITS are controlled by Intertek Group PLC. The Court does not find that the second <u>Gilbert</u> factor significantly favors plaintiff. Intertek Group PLC treats ITS as part of its Commercial and Electrical Division, and the seventh <u>Gilbert</u> factor favors plaintiff. However, even evidence of "a common board of directors and a unity of corporate purpose is insufficient" to disregard the corporate entity. <u>Warner v. Hillcrest Medical Center</u>, 914 P.2d 1060 (Okla. Civ. App. 1995). After reviewing all of the evidence, the Court does not find that plaintiff has presented sufficient evidence to overcome the general presumption that a subsidiary corporation should be treated as separate from a parent company. At most, plaintiff has shown that Intertek Group PLC has general corporate policies designed to achieve a unified purpose and that ITS is a wholly-owned subsidiary of Intertek Group PLC. There is no evidence as to whether ITS financially operates as a separate company or that ITS is so undercapitalized that it should be considered a sham corporation. The Court will not treat ITS and Intertek Group PLC as one entity for the purpose of service of process, and ITS may

not be considered Intertek Group PLC's involuntary agent for service. Thus, plaintiff's attempted service on Intertek Group PLC through its subsidiary ITS was not valid service on "Moody International a/k/a Intertek" [sic] under Rule 4.

The Court does not find that plaintiff has properly served "Intertek" and her amended motion for default judgment (Dkt. # 27) should be denied. Plaintiff's complaint and her method of service both bear some fault in the inadequate notice to the named defendant, and both issues should be cured if plaintiff intends to proceed with her claims. First, it may be unnecessary for plaintiff to pursue a claim against Moody International Limited's alleged successor-in-interest, because Moody International Limited appears to be a going concern. Even if successor liability is proper, plaintiff must do more than identify the successor-in-interest as "Intertek," and she must do more research to determine the actual corporate identity of the successor-in-interest. Plaintiff must file an amended complaint that correctly names her former employer or its successor-in-interest as a party. Second, plaintiff has not produced sufficient evidence to show that she has properly served defendant. It is apparent from plaintiff's affidavit of service (Dkt. # 10) that she believed she was directly serving Moody International by sending a copy of the complaint and a summons to the registered agent of ITS. Although she has subsequently attempted to show that service was proper under an agency or alter ego theory, the evidence produced by plaintiff does not establish that ITS may be treated as the involuntary agent of Intertek Group PLC for the purpose of service. The Court will require that plaintiff file an amended complaint properly identifying the defendant or defendants and that plaintiff re-serve the parties named in the amended complaint. The Court appreciates that this may

require service on a foreign corporation, and the Court will allow plaintiff 60 additional days to serve the properly named defendant or defendants.[2]

**IT IS THEREFORE ORDERED** that Plaintiff's Amended Motion for Default Judgment and Brief in Support (Dkt. # 27) is **denied**.

**IT IS FURTHER ORDERED** that plaintiff is directed to file an amended complaint naming the correct defendant or defendants no later **August 15, 2012**, and plaintiff shall serve the defendant or defendants named in the amended complaint no later than **October 15, 2012**.

**DATED** this 26th day of July, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[2]  The Supreme Court has noted that "the Convention provides simple and certain means by which to serve process on a foreign national . . . [and] parties that comply with the Convention ultimately may find it easier to enforce their judgments abroad." Volkswagenwerk Aktiengesellschaft, 486 U.S. at 706. Upon further research, plaintiff may find it easier to serve her former employer under the Hague Convention than by the means previously attempted. See www.travel.state.gov/law/judicial/judicial_671.html.